1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ALEX QUINTANA, JR.,

12              Plaintiff,

13        v.

14   ANDREW SAUL, Commissioner of Social
     Security,
15
                Defendant.
16

17

18

Case No. 1:19-cv-00814-DAD-EPG

FINDINGS AND RECOMMENDATIONS,
RECOMMENDING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT BE
GRANTED, AND THIS CASE BE
REMANDED FOR FURTHER
PROCEEDINGS CONSISTENT WITH THIS
OPINION

(ECF No. 15)

FOURTEEN-DAY DEADLINE

19

20        This matter is before the Court on Plaintiff's complaint for judicial review of an

21   unfavorable decision by the Commissioner of the Social Security Administration regarding his

22   application for Disability Insurance Benefits and Supplemental Security Income. Plaintiff's claim

23   for disability stems from his allegations that he suffers from multiple sclerosis, gout,

24   hypertension, depression, back pain, hyperlipidemia, and hyperglycemia. (A.R. 81). Plaintiff filed

25   a motion for summary judgment and remand on January 13, 2020. (ECF No. 15).

26        At a hearing on July 21, 2020, the Court heard from the parties and, having reviewed the

27   record, administrative transcript, the briefs of the parties, and the applicable law, recommends as

28   follows:

1

# I.    ANALYSIS

## A.    Medical Evidence

### 1.    Dr. Lorenzo Aguilar

Plaintiff claims the ALJ erred by improperly giving the opinion of his treating physician, Dr. Lorenzo Aguilar, little weight. (ECF No. 15 at 8).

The Ninth Circuit has held regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).  Dr. Aguilar's opinion is contradicted by, among others, non-examining agency physician Dr. Leigh McCary. Thus, this Court examines whether the ALJ provided specific and legitimate reasons supported by substantial evidence for giving little weight to Dr. Aguilar's opinions.

The ALJ gave the following reasons for the weight given to Dr. Aguilar's opinions:

> The opinion of Dr. Aguilar is given little weight. While the opinion is based upon a treatment relationship with the claimant, the opinion is inconsistent overall with evidence in the record, including treatment records from Dr. Aguilar. In fact, these records reveal the claimant has responded well to medication treatment. He has no macular abnormality. His EEG findings were negative. Additionally,

> records in evidence reveal the claimant regularly presents for appointments with a normal gait and consistently without assistance. The evidence of the claimant's activities are inconsistent with these findings. This includes his ability to maintain his personal care and hygiene, perform household chores, care for others, use public transportation, drive, prepare meals, shop, and run errands. The treatment records, and examiners, note the claimant regularly presents for appointments on time and as scheduled. He is often in no distress cooperative and/or friendly. In fact, overall throughout this time his physical examinations were unremarkable and/or unchanged. During 2017, the claimant's symptoms were stable and he responding fairly well to medication without significant side effects (Exhibits 10F; and 19F).

(A.R. 42).

Turning to the ALJ's first reason, the ALJ noted that Plaintiff has responded well to medication treatment. (A.R. 42). This does not, however, contradict Dr. Aguilar's opinions. Based on Dr. Aguilar's December 2017 report, the addition of gabapentin to treat his multiple sclerosis ("MS") resulted in "no new neurologic[al] deficit[s]," and that Plaintiff's had "[s]table symptoms." (A.R. 798). But stable does not mean improved or symptom-free. Dr. Aguilar's June 8, 2017 report—six months before being declared stable—stated that Plaintiff was able to stand and sit 0-2 hours at a time and 0-2 hours per day in an 8-hour workday. (A.R. 729). Moreover, Plaintiff began gabapentin in April 2017, so the limitations given apparently reflected the gabapentin.

The ALJ also found that Plaintiff had no macular abnormalities. (A.R. 42). However, the ALJ does not articulate why findings concerning Plaintiff's eye are inconsistent with Dr. Aguilar's statement.

Although the ALJ noted Plaintiff's EEG findings were negative, the ALJ did not explain how that contradicts Dr. Aguilar's opinion. (*See* A.R. 42). The Court inquired about this aspect at the hearing and neither the Commissioner nor Plaintiff could explain the meaning of negative EEG findings.

The ALJ also discounted Dr. Aguilar's opinion because "records in evidence reveal the claimant regularly presents for appointments with a normal gait and consistently without assistance." This is consistent with Dr. Aguilar's finding of Plaintiff's "relapsing remitting MS," (A.R. 798), because other records do indicate Plaintiff has an abnormal gait (A.R. 35 (ALJ

3

finding that Plaintiff has "[a]t times . . . demonstrated an abnormal gait and/or coordination"); 697 (Dr. Katzenberg noting "[g]ait is notable for left foot drop, inability to walk on his heel or toes on the left and poor tandem due to weakness and the foot drop. He also cannot hop or balance on the left foot"); 744 (Heather Hollander, FNP, noting "[g]ait disturbance")).

The ALJ also found that Plaintiff's activities were inconsistent with the findings. He notes that Plaintiff undertakes multiple activities of daily living—for instance, maintaining personal care and hygiene, performing household chores, using public transportation. However, Plaintiff's testimony indicates he had limited ability to do so. For instance, he will "help with the dishes which is kind of a task because I can – when I'm standing, physically moving my arms, I start to get the weakness so it takes me like 30, 40 minutes to just clean a few dishes but I try[.]" (A.R. 65). Plaintiff can walk a few blocks at most before needing to rest. (A.R. 66). He burns himself when cooking due to his problems with depth perception. (A.R. 66). His symptoms from his MS are intermittent. (A.R. 59). Therefore, this finding does not support the ALJ's position either.

The ALJ notes that Plaintiff also presents well at many of his appointments. (A.R. 42). This is not inconsistent with intermittent MS.

In sum, the ALJ erred by failing to provide specific, legitimate reasons supported by substantial evidence in the record when giving Dr. Aguilar's opinion little weight.

## 2.   Dr. Daniel Katzenberg

Plaintiff argues that the ALJ erred by improperly giving examining physician Dr. Daniel Katzenberg's testimony little weight. (ECF No. 15 at 8). The Ninth Circuit has provided the following standard regarding examining physicians' opinions:

> [T]he Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician.  And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.

*Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995), *as amended* (Apr. 9, 1996) (citation and internal quotation marks omitted).

Dr. Katzenberg's opinion was also contradicted by Dr. Leigh McCary.  The Court thus looks to whether Dr. Katzenber's opinion was rejected for specific and legitimate reasons that are

1   supported by substantial evidence in the record

2          The ALJ's stating reasons for giving Dr. Katzenberg's opinions little weight were as

3   follows:

> While the opinion is based upon examination of the claimant, and review of
> records, the opinion is overall inconsistent with the evidence in the record. This
> includes the claimant's treatment history. The treatment records reveal the
> claimant has undergone routine care for multiple sclerosis and gout. However
> overall his condition and symptoms were improved and managed with medication
> and lifestyle changes. He is often noted to be doing well or presenting as stable
> (Exhibits 1F pages 29 and 31; 4F pages 8 and 12 to 13; 17F pages 12 and 34; and
> 19F). The level of care he has required during this time has remained essentially
> unchanged. Additionally, while he had noted abnormalities on examination in
> strength sensation and gait these were noted to remain overall unchanged during
> this time. Moreover, evidence of his activities indicates a higher level of
> functioning as outlined in the residual functional capacity assessment above. This
> includes his ability to drive, prepare meals, attend to his personal care and
> hygiene, care for others, perform household chores, run errands, use public
> transportation, and manage medications and appointments.

13   (AR. 40-41).

14          Many of the deficits in giving Dr. Aguilar's opinion little weight also carry through here.

15   For instance, the ALJ discounted Dr. Katzenberg's opinion because "evidence of [Plaintiff's]

16   activities indicates a higher level of functioning as outlined in the residual functional capacity

17   assessment above." (A.R. 40). Those activities, as discussed above, are not necessarily

18   inconsistent with the residual functioning capacity assessment Dr. Katzenberg provided Plaintiff,

19   which was less restrictive than the one provided by Dr. Aguilar. (*See* A.R. 697) (Dr. Katzenberg's

20   RFC assessment providing "[n]o limitations" for sitting and "10-15 minutes at a time or

21   cumulatively for 1-2 hours out of an eight-hour workday" for "[s]tanding and/or [w]alking"). In

22   addition, the ALJ states that Plaintiff's condition had "improved" with medication and lifestyle.

23   However, the ALJ did not cite record evidence for that finding. Rather, the record appears to

24   establish that Plaintiff was not suffering "new neurologic[al] deficit[s]" and generally had

25   "[s]table symptoms." (A.R. 798). In fact, Dr. Katzenberg noted "fluctuation in [Plaintiff's] MS"

26   when comparing another doctor's previous findings with his own.

27          Thus, the ALJ's cited reasons are not specific and legitimate reasons supported by

28   substantial evidence in the record. As such, the ALJ erred by giving little weight to Dr.

1   Katzenberg's opinions.

2           **B.     Plaintiff's Statements Concerning His Symptoms**

3           "Where, as here, an ALJ concludes that a claimant is not malingering, and that she has

4   provided objective medical evidence of an underlying impairment which might reasonably

5   produce the pain or other symptoms alleged, the ALJ may reject the claimant's testimony about

6   the severity of her symptoms only by offering specific, clear and convincing reasons for doing

7   so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492–93 (9th Cir. 2015) (quotation marks and citation

8   omitted).[1] The Court reviews only the ALJ's stated reasoning and cannot "comb the

9   administrative record to find specific conflicts" between Plaintiff's testimony and the medical

10  evidence. *Id.* at 494.

11          Plaintiff stated at the hearing before the ALJ that he does some household chores but is

12  limited in doing so. For instance, he will "help with the dishes which is kind of a task because I

13  can – when I'm standing, physically moving my arms, I start to get the weakness so it takes me

14  like 30, 40 minutes to just clean a few dishes but I try[.]" (A.R. 65). He is able to walk a few

15  blocks at most before needing to rest. (A.R. 66). He burns himself when cooking due to his

16  problems with depth perception. (A.R. 66). His symptoms from his MS are intermittent. (A.R.

17  59).

18          In his opinion, the ALJ found that aspects of Plaintiff's testimony were inconsistent with

19  the record:

20          After careful consideration of the evidence, the undersigned finds that the
            claimant's medically determinable impairments could reasonably be expected to
21          cause the alleged symptoms; however, the claimant's statements concerning the
            intensity, persistence and limiting effects of these symptoms are not entirely
22          consistent with the medical evidence and other evidence in the record for the
            reasons explained in this decision.
23

24  (A.R. 34).

25          The ALJ then pointed to the following types of evidence as inconsistent with Plaintiff's

26  _____

27  [1] The Commissioner acknowledges the Ninth Circuit's use of the clear and convincing evidence standard but argued
    that the proper standard is "the deferential substantial evidence standard set forth in 42 U.S.C. § 405(g) . . . ." (ECF
    No. 19 at 27). Ninth Circuit precedent clearly rejects this approach. *See Brown-Hunter*, 806 F.3d at 493 (noting and
28  rejecting Commissioner's argument against clear-and-convincing standard).

stated symptoms:

- Plaintiff can "engage[] in a somewhat normal level of daily activity and interaction," including preparing his meals and performing light household chores.
- Plaintiff's examinations and laboratory studies "were unremarkable and unchanged."
- Plaintiff's level of care is unchanged.
- Plaintiff presents for appointments in no distress with appropriate mood and affect. He can communicate during examinations.
- His flareups were associated with not adhering to treatment or additional life stressors, and these were managed by resuming medications or managing his stressors.
- Plaintiff's gout was managed with his medication and was asymptomatic.

(A.R. 34-35).

None of these are inconsistent with Plaintiff's stated symptoms. Plaintiff reports his ability to engage in daily activity and interaction fluctuates and he cannot sustain the level of activity. (A.R. 59, 65). The ALJ found Plaintiff's examinations and laboratory studies were unremarkable and unchanged. The ALJ mostly points to Plaintiff's gout symptoms, but the parties do not dispute that Plaintiff has MS. At the hearing the Commissioner's counsel pointed to Plaintiff's electroencephalogram ("EEG") test results on A.R. 798. However, Dr. Aguilar's notes show that his MRI results indicate worsening MS. (A.R. 645) ("Comparatively speaking, his MRI of the brain in 2011 compared to the present showed significant extension and presence of additional plaque burden. I'm concerned about the possibility of more malignant MS in this patient.").

With respect to the level of care, the ALJ cites to Dr. Aguilar's report on A.R. 798 to establish that "treatment records from 2017 indicate normal lab findings, a fairly well response to medications, and overall noted stability of his conditions." That page, from December 11, 2017, notes that his symptoms are continuing but stable and that he has had problems getting insurance to cover his medication. As discussed above, stable is not the same as symptom-free.

Plaintiff's ability to show up for appointments without distress is also not inconsistent with his diagnosis of MS or his inability to *maintain* a level of activity. The ALJ found that his symptoms could be managed by reducing life stressors or resuming medication. The ALJ cites to

pages 492 and 798 of the A.R. Neither page indicates supports the ALJ's reasoning. Page 492, a record from January 2011, discusses Plaintiff's cerebrovascular disease (apparently a record before Plaintiff's 2011 MS diagnosis, (*see* A.R. 59)) and does not indicate reducing stressors or resuming medication improves his symptoms. Page 798 indicates that Plaintiff responds well to his then-current treatment and has remained stable. But, again, stable means that Plaintiff is not getting worse, not that Plaintiff is without substantial limitations. Finally, successfully managing of Plaintiff's gout is also consistent with Plaintiff's complaints of MS.

In sum, the ALJ erred by not providing clear and convincing evidence for rejecting Plaintiff's symptoms.

### C.   Harmlessness

The Court next examines whether these errors were harmless. "[W]here harmlessness is clear and not a 'borderline question,' remand for reconsideration is not appropriate," *McLeod v. Astrue,* 640 F.3d 881, 888 (9th Cir. 2011), but Ninth Circuit precedents "have been cautious about when harmless error should be found." *Marsh v. Colvin,* 792 F.3d 1170, 1173 (9th Cir. 2015); *see also, e.g., Molina v. Astrue,* 674 F.3d 1104, 1115-17 (9th Cir. 2012) (reviewing the Ninth Circuit's harmless error principles in the Social Security context). Here, if the ALJ were to properly credit Dr. Aguilar's opinions and Plaintiff's testimony, he reasonably could determine that Plaintiff had a more restrictive RFC—perhaps even less than sedentary. Thus, the Court is unable to conclude that the ALJ's assignment of little weight to the treating physician's opinions and to Plaintiff's testimony was clearly harmless. Consequently, reversal is warranted. *See Marsh,* 792 F.3d at 1172-73 (reversing finding of harmless error where reviewing court could not "confidently conclude" that ALJ's failure to mention or expressly reject treating source's medical notes was harmless).

### D.   Remedy

"[W]here (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant

disabled on remand,  we remand for an award of benefits." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (internal quotation marks and citations omitted). There are "rare instances, though [where] each of the credit-as-true factors is met, [but] the record as a whole leaves serious doubt as to whether the claimant is actually disabled, in which case we remand for further development of the record." *Id.* at 668 n.8.

Plaintiff argues that he is entitled to an award of benefits because, based on Dr. Aguilar's opinion, he must be found disabled. Plaintiff argues that the ALJ noted on the record, that using Dr. Aguilar's "assessment [of] zero to two hours of sitting, standing and walking," would require a finding of "disabling and substantially below sedentary." (A.R. 79). While it appears that given the restrictions opined by the doctors and Plaintiff's testimony, as well as the ALJ's statement, that Plaintiff is likely disabled with such limitations, Plaintiff does not point to any testimony by a vocational expert clearly addressing these limitations. Accordingly, in the abundance of caution, the Court will recommend remanding to the agency for further proceedings consistent with this opinion. *See Olshane v. Berryhill*, No. CV 17-05727, 2018 WL 2315948 (C.D. Cal. May 18, 2018) (after finding ALJ erred by assigning too little weight to treating physician who opined a zero-to-two hour daily maximum of sitting, standing and walking, remanding to ALJ); *Slaughter v. Berryhill*, No. 2:17-CV-08190, 2018 WL 4849105, at *5, 8-9 (C.D. Cal. Oct. 4, 2018) (same).

## II.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that:

1.    Plaintiff's motion for summary judgment be GRANTED, IN PART, and DENIED, IN PART; and

2.    The decision of the ALJ be REVERSED and REMANDED for further administrative proceedings consistent with this opinion.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 4, 2020**             /s/ *Erica P. Grosjean*
                                          UNITED STATES MAGISTRATE JUDGE